IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ELIJAH RAY WILKINS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:21-cv-00428 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth Dillon |
| U.S. DEPT. OF TREASURY (I.R.S.), | ) |     United States District Judge |
|     Defendant. | ) | |

**MEMORANDUM OPINION**

Elijah Ray Wilkins, a Virginia inmate proceeding *pro se*, filed this action as a petition for writ of mandamus. In his petition, he asks the Court to order defendant to provide him with $3,200, representing the first ($1,200), second ($600), and third ($1,400) CARES Act Economic Impact Payments (EIPs), which he alleges he has not received. Wilkins paid the full filing fee and served the named respondent, "U.S. Dept. of Treasury (I.R.S.)."

The United States of America has responded "as the real party in interest," and has construed Wilkins's complaint as a request for a tax refund relative to two different tax years, pursuant to 26 U.S.C. § 7422, as opposed to a petition for mandamus.[1] The court finds that it is appropriate to so construe his petition and thus will direct the Clerk to update the parties to reflect that they are a plaintiff and defendant, rather than a petitioner and respondent.

The United States filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative for summary judgment, seeking to dismiss the suit in full. (Dkt. No. 31.) As to the claims for EIP 1 and EIP 2, the United States argues that they are moot

---

[1] As explained in Section I *infra*, a taxpayer who did not automatically receive the EIPs was required to seek them on a return for specific tax years. Thus, Wilkins's suit is best understood as two separate claims for refund; one for tax year 2020 in the amount of $1,800 (for EIP 1 and EIP 2) and the second claim for a refund for tax year 2021 in the amount of $1,400 (for EIP 3).

because Wilkins has now received those payments. As to EIP 3, the United States contends that the court lacks jurisdiction over the claim because the United States has sovereign immunity as to it.

Wilkins has responded (Dkt. No. 33), and the United States has filed a reply (Dkt. No. 34), so the motion is ripe for disposition. For the reasons set forth herein, the court will grant the motion to dismiss in part and will dismiss Wilkins's claims as to EIP 1 and EIP 2 as moot. As to his claim seeking a refund for EIP 3, the court will deny the motion without prejudice and direct a renewed motion with additional briefing on specific issues.

## I. BACKGROUND

In his brief petition, Wilkins claimed that the IRS had "paid an imposter $3200 belonging to him," and that they "erroneously paid to a fraud," referencing the "economic income payment." (Compl. 1, Dkt. No. 1.) He further alleged that the IRS would not communicate or correspond with him about the issue. (*Id.*)

The United States provides the following background information about the EIPs, none of which Wilkins disputes, and which is supported by the cited authority:

> Congress passed the CARES Act in response to the Covid-19 pandemic. Among other things, the CARES Act provided for individual Economic Impact Payments (EIPs) for qualified individuals. The first EIP, codified at 26 U.S.C. § 6428, allowed for a payment of up to $1,200 for each qualified individual. The second, provided for by the Consolidated Appropriations Act (CCA) and codified at 26 U.S.C. § 6428A, allowed for a payment of $600 for each qualified individual. The third EIP, codified at 26 U.S.C. § 6428B, allowed for a payment up to $1,400.
>
> Under the statutes, the EIPs are designed to issue in two different ways. Initially, Congress instructed the IRS to issue the EIPs as advanced credits. See §§ 6428(f); 6428A(f); 6428B(g). The Service thus sent paper checks and direct deposits—commonly referred to as stimulus checks—to millions of eligible individuals. Any qualified individuals who did not receive EIP 1 by December 31, 2020, § 6428(f)(3)(A), EIP 2 by January 15, 2021, § 6428A(f)(3)(A), and/or EIP 3 by December 31, 2021, § 6428B(g)(3), are

> still entitled to the stimulus money, but they will no longer receive a paper check or direct deposit as an advanced credit. Instead, qualified individuals are encouraged to claim the EIP amounts as credits on their tax returns to receive the stimulus money in the form of a tax refund. See §§ 6428(a); 6428A(a); 6428B(a). EIP 1 and EIP 2 must be claimed on a return for tax year 2020, §§ 6428(a); 6428A(a), while EIP 3 must be claimed on a return for tax year 2021, § 6428B(a). Finally, . . . [a] federal court lacks jurisdiction to hear a refund claim until six months have elapsed since the filing of the return. 26 U.S.C. § 6532(a)(1).

(Def.'s Mem. Supp. Mot. Dismiss 2–3, Dkt. No. 31-1.)

Moreover, although Wilkins alleged that his initial stimulus checks were obtained by someone else via fraud, the records defendant has provided clearly reflect that the initial checks were sent to Wilkins, but returned. (Tax Records, Dkt. No. 31-1, at 2.)

Subsequent to filing this suit, however, Wilkins was provided with both EIP 1 and EIP 2, plus interest on both, after he filed his 2020 tax return claiming them. Wilkins admits in his opposition to the motion to dismiss that he has received those amounts. (Pl.'s Opp'n to Mot. Dismiss 4, Dkt. No. 33.)

As to EIP 3, if a qualified individual did not receive EIP 3 by December 31, 2021, the way to obtain that payment was to file a 2021 tax return, claiming the stimulus money in the form of a tax refund. 26 U.S.C. §§ 6428B(1), 6428B(g)(3). And, as noted, the relevant statutory scheme also provides that the federal court lacks jurisdiction to hear a refund claim until six months have elapsed since the filing of the return. 26 U.S.C. § 6532(a)(1).

According to defendant, and based on information conveyed to its counsel by Wilkins, Wilkins filed a paper return for tax year 2021 on June 9, 2022, almost a year *after* he filed this lawsuit. Additionally, at the time that briefing on the motion to dismiss was completed in August 2022, the six-month period under which the United States has sovereign immunity had not yet passed. Instead, that period expired on December 9, 2022, or earlier, if Wilkins's request

3

for a refund was denied earlier.[2]

## II.  DISCUSSION

**A.  Federal Rule of Civil Procedure 12(b)(1)**

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject-matter jurisdiction to hear the claims before it.  "The plaintiff has the burden of proving that subject-matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  It must, however, "view[ ] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R*, 945 F.2d at 768).

Here, the United States contends that the court lacks jurisdiction regarding plaintiff's claims as to EIP 1 and EIP 2 because they are moot.  "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) (citations omitted).  "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Townes v. Jarvis*, 577 F.3d 543, 546 (4th Cir. 2009) (citation omitted), and "[f]ederal courts lack jurisdiction to decide

---

[2] Because of that timing, and as discussed *supra* in Section II-C, no party has addressed whether the United States still has sovereign immunity for a suit filed before the expiration of the six-month period, but still pending when that period expires.

moot cases . . . ." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012) (internal quotation marks omitted). Where only a portion of a case has been mooted by subsequent events, the court loses jurisdiction over that portion. *See Incumaa v. Ozmint*, 507 F.3d 281, 285–86 (4th Cir. 2007) (explaining that the court lacks jurisdiction over any portion of an appeal that becomes moot); *United States v. Bishop*, 614 F. App'x 674, 675 (4th Cir. 2015) (recognizing rule and applying it to case before it).

Wilkins admits that he received EIP 1 or 2, plus interest. (Pl.'s Opp'n 4.) He argues, though, that he did not know he should have sought those monies as a tax refund suit. (*Id.* at 1.) Thus, he instead filed his petition for mandamus, asking the court to compel defendant to communicate with him about his EIPs. He contends that he received no communications at all concerning his EIPs until after he filed this suit, and he questions whether the IRS initially sent his stimulus checks to an incorrect address. (*Id.* at 1–2.) He asserts that defendants would never have "attempted to clear this issue up" had he not filed his petition. (*Id.* at 2.) He further appears to be arguing that his claims as to those payments are not moot, because he has not been reimbursed for his out-of-pocket costs associated with this lawsuit, *i.e.*, the filing fee and the cost of hiring process servers. (*Id.* at 3, 4.)

The court is unpersuaded by Wilkins's arguments. Because Wilkins has been paid EIP 1 and EIP 2, with interest, he has received complete relief for his claims for those payments. "When an individual plaintiff receives complete relief for her claims, [she] no longer has a live case or controversy because there is no additional relief that she can hope to obtain through further litigation." *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 642 (E.D. VA. 2019);

Thus, the claims for a refund for tax year 2020, for the $1,800 total for EIP 1 and EIP 2, are moot. *See Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1190 (11th Cir. 2011) (holding that full payment of requested refund mooted taxpayer's claim).

Moreover, a dispute over costs or fees is not a "live case or controversy" that would save a fully paid claim from mootness. *Cf. Giovanni Carandola, Ltd. v. City of Greensboro*, 258 F. App'x 512, 514 (4th Cir. 2007) ("[T]he existence of a live controversy concerning attorney's fees cannot save the underlying claim from mootness."); *Samsung Elecs. Co. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 480 (E.D. Va. 2005) (discussing issue at length and describing it as "settled that a claim for attorney's fees [or costs] does not avert mootness of the underlying claim even though there is jurisdiction to determine whether a party is entitled to attorney's fees and, if so, how much."). Further, as the United States points out in its supply, it is unclear whether Wilkins would be considered a prevailing party, so as to entitle him to costs, and the circumstances under which a party can recover costs against the United States are limited. *See* Fed. R. Civ. P. 54(d)(1); 26 U.S.C. § 7430 (setting forth conditions on which a prevailing party may recover "reasonable costs and fees" from the United States in a tax refund suit). For all of these reasons, the court lacks jurisdiction over Wilkins's claims for EIP 1 and EIP 2, and defendant's motion to dismiss those claims must be granted.

**B. Claim For EIP 3**

As for Wilkins's claim for a refund of $1,400 for EIP 3, the United States contends that the court lacks jurisdiction over that claim because the United States has not waived its sovereign immunity with regard to it. In particular, before a taxpayer may bring a claim for a refund in federal court, Section 7422 requires him to first "pay the full amount of the contest assessment, to file a claim for refund with the IRS after the payment, and to allow either the IRS to reject the

6

claim for refund or six months to pass without any IRS action on the claim for refund." *Douglas v. United States*, 727 F. Supp. 239, 240 (W.D.N.C. 1989).

The six-month waiting period is set forth in Section 6532(a)(1), which provides:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceedings relates.

26 U.S.C. § 6532(a)(1).

Until those prerequisites are met, however, the United States retains sovereign immunity from such claims. *Blatt v. United States*, 34 F.3d 252, 257 (4th Cir.1994) ("The United States consents to be sued for tax refunds only when the refund claim is filed in accordance with the Internal Revenue Code.") (citations omitted). And where a taxpayer does not—or has not—complied with those requirements, immunity has not been waived and the federal court lacks jurisdiction over such refund suits. *See Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006); *Lewis v. Sandler*, 498 F.2d 395, 399–400 (4th Cir. 1974).

The court's analysis of this issue, however, is complicated by the timing of this ruling relative to the parties' briefing. Specifically, because the motion was briefed before the expiration of that six-month period, no party has discussed or briefed what now could be two key issues—the first factual and the second legal. The factual issue is whether the IRS has since processed Wilkins's 2021 return or issued and paid him $1,400 for IEP 3. The legal issue is whether, if a lawsuit is filed before the six-month period expires, but remains pending after that, the United States' immunity is then waived, effectively giving the court jurisdiction over that

particular claim.³ Put differently, the issue is whether the six-month period must have expired before suit is filed to confer jurisdiction or whether a taxpayer may amend his complaint after filing to allege that he has since satisfied the jurisdictional prerequisites.

Without information about those issues, the court concludes that defendant's motion should be denied without prejudice as to Wilkins's claim for IEP 3. Instead, and within thirty days of the entry of this order, defendant will be directed to file any renewed motion to dismiss for lack or jurisdiction or any motion for summary judgment. In addition to whatever other issues it chooses to address, defendant shall also address the factual and legal issue highlighted in the preceding paragraph.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied without prejudice in part.

An appropriate order will be entered.

Entered: March 13, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

³ For example, some courts have held that a taxpayer could cure the lack of subject-matter jurisdiction when the tax refund suit began by satisfying the jurisdictional prerequisites after filing suit and then amending the complaint to allege that they were satisfied, at least where the United States agreed to the amendment. *See, e.g.*, *Mires v. United States*, 466 F.3d 1208, 1211–12 (10th Cir. 2006); *Harriman v. I.R.S.*, 233 F. Supp. 2d 451, 459 (E.D.N.Y. 2002). *But see Gaynor v. United States*, 150 Fed. Cl. 519, 530 (2020). In *Gaynor*, the Court of Federal Claims emphasized that jurisdiction is determined on the basis of facts that exist at the time of filing suit. Although it recognized that there are some exceptions to that rule, it reasoned, with citations to supporting authority, that it would be improper to allow amendment to cure a jurisdictional defect based on a statutory waiting period—*i.e.*, the plaintiff's failure to wait the full six months. *Id.* (citations omitted).